IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00204-RBJ-KLM

MAURICE LEWIS,

    Plaintiff,

v.

CARECORE NATIONAL LLC,

    Defendant.

_____

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Defendant's **Motion for Summary Judgment**

[Docket No. 55; Filed November 22, 2011] (the "Motion").  Pursuant to 28 U.S.C. §

636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion was referred to this Court for

recommendation [#58].  Plaintiff, who proceeds in this matter *pro se*, filed a Response [#60]

to the Motion on April 3, 2012.  Defendant filed a Reply [#61] on April 17, 2012.  The Court

has reviewed the Motion, the Response, the Reply, the case file, and the applicable law,

and is sufficiently advised in the premises.  For the reasons stated below, the Court

respectfully **RECOMMENDS** that the Motion [#55] be **GRANTED**.

### I.  Summary of the Case

    Plaintiff, who is African-American, filed this lawsuit on January 26, 2011 and filed an

Amended Complaint on February 8, 2011.  *See Compl.* [#1]; *Am. Compl.* [#5]; *Ex. B: Ex.*

*26 to Depo. I of Pl.* [#56-3] at 70-71.[1]  He asserts a claim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") based on six alleged acts by Defendant, his former employer.  *See Am. Compl.* [#5].  As summarized by Defendant, these alleged acts were that Defendant: "(1) terminated his employment[ ] in October 2008 . . . , (2) reinstated his employment without back pay in October 2008, (3) did not evaluate his job performance in January 2009, (4) assigned him to work from an office rather than to telecommute in March 2009, (5) did not promote him during his employment, and (6) terminated his employment . . . in July 2009."  *Motion* [#56] at 1-2.  Plaintiff seeks compensatory and punitive damages as well as injunctive relief in the form of a statement that he is "rehireable."  *Id.* at 16; *see also Response* [#60] at 1-2 (discussing the bases for Plaintiff's Title VII claim).

As an initial matter, the Court notes that Plaintiff submitted no summary judgment evidence in connection with his Response [#60] to the Motion.  Further, although Fed. R. Civ. P. 56(e) allows a complaint to be treated as an affidavit if it is based on personal knowledge and has been sworn to under penalty of perjury, that is not the case here; Plaintiff's Amended Complaint [#5] is not verified.  Because Plaintiff did not submit his Amended Complaint [#5] sworn under penalty of perjury, it cannot be considered as an affidavit for Rule 56 purposes.  *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997).  Importantly, Plaintiff submitted no evidence relating to racial discrimination aside from his membership in a protected class, which is not disputed.  *See Motion* [#56] at 14-17.  As discussed below, much more evidence is necessary to entitle Plaintiff to a trial on

---

[1]  Throughout this Recommendation, the Court cites to the docket page number, not the transcript page number, when citing to Plaintiff's deposition.

the merits of his claims.  Because of the lack of evidence presented by Plaintiff, the Court therefore adopts the detailed and well-supported Statement of Undisputed Facts provided by Defendant, as adapted below.  *See Motion* [#56] at 2-11.

Defendant operates a call center which handles calls from medical offices regarding patients' health insurance benefits.  *Scheduling Order* [#34] § 3.a; *Ex. A, Decl. of Beetham* [#56-1] ¶ 2.  On October 15, 2007, Defendant hired Plaintiff to be a Data Intake Coordinator.  *Ex. B: Depo. I of Pl.* [#56-2] at 2-3; *Ex. B: Ex. 1 to Depo. I of Pl.* [#56-3] at 6.  Cynthia Beetham ("Beetham") supervised Plaintiff while he worked in that position.  *Ex. B: Depo. I of Pl.* [#56-2] at 4.

Plaintiff received a copy of Defendant's Employee Handbook when he was hired.  *Id.* at 8-9; *Ex. B: Ex. 4 to Depo. I of Pl.* [#56-3] at 27-30.  The Handbook sets forth Defendant's attendance policy, which describes Defendant's expectations for employees, attendance requirements, discipline for unacceptable attendance, the notification procedure for absences from work, and discipline for failing to notify Defendant of absences.  *Ex. B: Ex. 4 to Depo. I of Pl.* [#56-3] at 27-30.  The policy also prohibits tardiness and "unscheduled absences," which it defines as "time away from work that has not been prescheduled or pre-approved."  *Id.* at 27-28.

Pursuant to the policy, tardiness, unscheduled absences, and early departures that are not subject to an exception are denominated "occurrences."  *Id.*  Exceptions to Defendant's attendance requirements are permitted when an employee misses work because: (1) the employee or an immediate family member requires emergency room or urgent care treatment; (2) a supervisor sends the employee home sick; (3) a school or daycare center calls the employee to pick up a sick child; (4) the employee is late due to

traffic that causes other employees to be late; (5) the employee is involved in a traffic accident; (6) the employee misses work due to inclement weather that prevents others from traveling to work; and/or (7) the employee logs into the call system late due to technical problems.  *Id.* at 28.  Defendant's policy specifies disciplinary action for "occurrences" as follows:

> Employees who have had no occurrences during the previous six-month period will be allowed one occurrence before any discipline is assessed.  For all other employees the first occurrence, as defined [in the attendance policy], will result in a documented verbal counseling. A second occurrence during the subsequent ninety days will result in a written warning, followed by a final written warning for a third occurrence and termination for a fourth occurrence.

*Id.* at 29.  Defendant also requires each employee to notify his supervisor and leave a message on the "call-off line," a telephone number used by employees who will miss work for an unscheduled absence.  *Ex. B: Depo. I of Pl.* [#56-2] at 9; *Ex. B: Ex. 4 to Depo. I of Pl.* [#56-3] at 28.  Regardless of whether an exception is given for an unscheduled absence, a final written warning is issued to an employee the first time he fails to notify Defendant of an absence and employment is terminated the second time that the employee misses work without giving Defendant notice.  *Ex. B: Ex. 4 to Depo. I of Pl.* [#56-3] at 29.

On October 17, 2007, Plaintiff had an unscheduled absence from work.  *Ex. B: Depo. I of Pl.* [#56-2] at 11.  As a result of Plaintiff's October 17 absence, Paula Miller ("Miller") coached Plaintiff about Defendant's attendance expectations.  *Ex. B: Depo. I of Pl.* [#56-2] at 11-12; *Ex. B: Ex. 6 to Depo. I of Pl.* [#56-3] at 41.

Plaintiff also had unscheduled absences from work on Monday, January 28, 2008, and Wednesday, January 30, 2008.  *Ex. B: Depo. I of Pl.* [#56-2] at 13-14; *Ex. B: Ex. 7 to Depo. I of Pl.* [#56-3] at 42.  On February 4, 2008, Plaintiff notified Defendant that he would

be late to work, but he neither came to work nor told Defendant that he would be missing work all day. *Ex. B: Ex. 7 to Depo. I of Pl.* [#56-3] at 42. On February 5, 2008, Beetham gave Plaintiff a Final Written Warning for failing to call in on February 4, 2008 and warned Plaintiff about the importance of being at work as scheduled. *Id.*; *Ex. B: Depo. I of Pl.* [#56-2] at 14-15. On Thursday, February 27, Monday, March 24, Tuesday, April 22, and Wednesday, May 14, 2008, Plaintiff missed work and went to a hospital emergency room. *Ex. C: Depo. II of Pl.* [#56-4] at 7-8; *Ex. C: Ex. 33 to Dep. II of Pl.* [#56-4] at 10.

In April 2008, Plaintiff transferred to a Non-Clinical Customer Service Representative position. *Ex. B: Ex. 3 to Depo. I of Pl.* [#56-3] at 7-8. Plaintiff was supervised by Jonathan Wade Moss ("Moss") while he held this new position. *Ex. B: Depo. I of Pl.* [#56-2] at 5.

From time to time when Defendant had too little office space in Colorado Springs, it assigned Non-Clinical Customer Service Representatives to telecommute. *Id.* at 46; *Ex. B: Ex. 16 to Depo. I of Pl.* [#56-3] at 58. According to company policy, a Non-Clinical Customer Service Representative could be selected to telecommute only if he satisfied six criteria including: (a) holding Defendant's Customer Service Certification, (b) having no more than one "occurrence" under the attendance policy in the previous 90 days, and (c) being subject to no current corrective action. *Ex. B: Depo. I of Pl.* [#56-2] at 46; *Ex. B: Ex. 16 to Depo. I of Pl.* [#56-3] at 58.

On June 2, 2008, Plaintiff had another unscheduled absence from work. *Ex. B: Depo. I of Pl.* [#56-2] at 18. Plaintiff missed work and went to a hospital emergency room on Tuesday, June 3, 2008. *Ex. C: Depo. II of Pl.* [#56-4] at 6-7; *Ex. C: Ex. 32 to Dep. II of Pl.* [#56-4] at 9. On June 5, 2008, Plaintiff was two hours and fifty-three minutes late to work. *Ex. B: Depo. I of Pl.* [#56-2] at 16-17; *Ex. B: Ex. 9 to Depo. I of Pl.* [#56-3] at 43.

That day, Moss gave Plaintiff a Final Written Warning because Plaintiff did not notify Defendant before he missed work on June 2, 2008; Moss also warned Plaintiff about unscheduled absences. *Ex. B: Depo. I of Pl.* [#56-2] at 16-18; *Ex. B: Ex. 9 to Depo. I of Pl.* [#56-3] at 43.   Plaintiff missed work and was treated at a hospital emergency room on Friday, June 13, Monday, July 7, and Friday, July 25, 2008. *Ex. C: Depo. II of Pl.* [#56-4] at 5-6; *Ex. C: Ex. 32 to Dep. II of Pl.* [#56-4] at 9.   Plaintiff was absent from work on September 15 and 17, 2008. *Ex. B: Depo. I of Pl.* [#56-2] at 19.  On September 25, 2008, Moss verbally warned Plaintiff because Plaintiff's September 15 and 17 absences were unscheduled. *Ex. B: Depo. I of Pl.* [#56-2] at 19-21; *Ex. B: Ex. 10 to Depo. I of Pl.* [#56-3] at 44.   On Tuesday, September 30, 2008, Plaintiff missed work and was treated at a hospital emergency room. *Ex. C: Depo. II of Pl.* [#56-4] at 5; *Ex. C: Ex. 33 to Dep. II of Pl.* [#56-4] at 10.

On October 1, 2008, Mary Loots ("Loots") terminated Plaintiff's employment because Plaintiff had not given Defendant notice before missing work on September 30, 2008. *Ex. B: Depo. I of Pl.* [#56-2] at 22-23, 34.  Loots was the Call Center Manager and Moss's supervisor when she terminated Plaintiff's employment. *Id.* at 6, 23. Loots told Plaintiff that he was "part of a trend" and that too many employees at the call center were missing too many days of work. *Id.* at 23-24.

On October 7, 2008, Miller told Plaintiff that Defendant wanted to reinstate his employment. *Id.* at 26-27, 30; *Ex. B: Ex. 10 to Depo. I of Pl.* [#56-3] at 45.  Miller reinstated Plaintiff's employment because Miller determined that, although Plaintiff had not notified Moss that he would be absent on September 30, 2008, he had given notice through the call-off line. *Ex. D: Decl. of Westberg* [#56-5] ¶ 3.  Thus, Miller thought that a lower level

of disciplinary action was warranted.  *Id.*  At the time of Plaintiff's first termination, Defendant believed that Plaintiff failed to follow the notification procedures regarding his unscheduled absence on September 30, 2008.  *Ex. B: Depo. I of Pl.* [#56-2] at 31-32.

Because Plaintiff failed to give his supervisor, Moss, notice that he would be absent on September 30, Miller gave Plaintiff a Final Written Warning when Plaintiff's employment was reinstated on October 13, 2008.  *Id.* at 28-29; *Ex. B: Ex. 12 to Depo. I of Pl.* [#56-3] at 46.  The October 13 Final Written Warning remained active until March 9, 2009.  *Ex. B: Ex. 12 to Depo. I of Pl.* [#56-3] at 46.  Defendant did not compensate Plaintiff for the time he did not work between October 1 and 13, 2008, because Plaintiff did not ask Defendant to do so and because Defendant paid employees based on time actually worked.  *Ex. D: Decl. of Westberg* [#56-5] ¶ 4; *Ex. E: Decl. of Miller* [#56-6] ¶ 3.

Until March 9, 2009, active discipline disqualified Plaintiff from eligibility to telecommute.  *Ex. B: Depo. I of Pl.* [#56-2] at 48.  On October 15, 2008, Beetham gave Plaintiff a performance review that stated his next review would be January 1, 2009.  *Ex. B: Depo. I of Pl.* [#56-2] at 34-35; *Ex. B: Ex. 13 to Depo. I of Pl.* [#56-3] at 48; *Scheduling Order* [#34] § 4.4.  In the October 15 evaluation, Beetham rated Plaintiff's attendance and punctuality as not meeting Defendant's expectations and noted, "[Plaintiff] needs to concentrate on his attendance record.  He does an outstanding job when he can be counted on to be present daily."  *Ex. B: Depo. I of Pl.* [#56-2] at 37; *Ex. B: Ex. 13 to Depo. I of Pl.* [#56-3] at 48.

On December 19, 2008, Plaintiff took and failed Defendant's Customer Service Certification Test.  *Ex. B: Depo. I of Pl.* [#56-2] at 46-48.  Beetham evaluated Plaintiff's job performance in January 2009.  *Id.* at 38-40; *Ex. B: Ex. 13 to Depo. I of Pl.* [#56-3] at 49; *Ex.*

*A: Decl. of Beetham* [#56-1] ¶ 3.   Plaintiff was absent from work and was treated at a hospital emergency room on Monday, January 12, Thursday, February 19, and Monday, March 23, 2009.   *Ex. C: Depo. II of Pl.* [#56-4] at 2-4; *Ex. C: Ex. 33 to Dep. II of Pl.* [#56-4] at 10.

Defendant revised its attendance policy in March 2009.   *Ex. B: Depo. I of Pl.* [#56-2] at 49.   Defendant gave Plaintiff a copy of the revised attendance policy on March 19, 2009. *Id.*; *Ex. B: Exs. 18 & 19 to Depo. I of Pl.* [#56-3] at 59-63.   The March 2009 amendments limited the number of attendance exceptions an employee could have in a 90-day period to two.   *Ex. B: Depo. I of Pl.* [#56-2] at 49-50; *Ex. B: Ex. 18 to Depo. I of Pl.* [#56-3] at 60.

In March 2009, Moss told Plaintiff that Defendant would have telecommuting positions available sometime in the future and asked Plaintiff if he would be interested in telecommuting.   *Ex. B: Depo. I of Pl.* [#56-2] at 41-42.   Plaintiff told Moss that he was interested in telecommuting, so Moss placed Plaintiff's name on a list of employees whom he recommended be assigned to telecommute.   *Id.* at 42-45.   On March 25, 2009, Moss told Plaintiff that Defendant did not have enough telecommuting equipment for Plaintiff to start telecommuting.   *Id.* at 45; *Ex. B: Ex. 18 to Depo. I of Pl.* [#56-3] at 57.

On April 6, 2009, Plaintiff was absent from work and was treated at a hospital emergency room.   *Ex. C: Depo. II of Pl.* [#56-4] at 4; *Ex. C: Ex. 33 to Dep. II of Pl.* [#56-4] at 10.   On April 20 and 21, 2009, Plaintiff was absent from work due to illness.   *Ex. B: Depo. I of Pl.* [#56-2] at 51-52; *Ex. B: Ex. 21 to Depo. I of Pl.* [#56-3] at 65; *Ex. C: Depo. II of Pl.* [#56-4] at 4.   Plaintiff gave Defendant less than one hour's notice that he would be absent from work on April 21, 2009.   *Ex. B: Depo. I of Pl.* [#56-2] at 51-53.   On April 23, 2009, Moss verbally warned Plaintiff for giving insufficient notice that he would be absent

on April 21.  *Id.*; *Ex. B: Ex. 20 to Depo. I of Pl.* [#56-3] at 64.  As of April 23, 2009, active discipline disqualified Plaintiff from eligibility to telecommute.  *Ex. B: Depo. I of Pl.* [#56-2] at 48, 53-54.  The April 23 Verbal Warning remained active for 90 days.  *Ex. B: Ex. 20 to Depo. I of Pl.* [#56-3] at 64.

On May 28, 2009, Moss gave Plaintiff a written warning because Plaintiff arrived at work twenty-seven minutes late.  *Ex. B: Depo. I of Pl.* [#56-2] at 57; *Ex. B: Ex. 20 to Depo. I of Pl.* [#56-3] at 66.  Plaintiff was tardy on May 28 because he received a traffic ticket on his way to work.  *Ex. B: Depo. I of Pl.* [#56-2] at 55, 57.  Under Defendant's attendance policy, traffic tickets do not excuse tardiness or absence from work.  *Id.* at 56; *Ex. B: Ex. 18 to Depo. I of Pl.* [#56-3] at 59-60.

On June 1, 2009, Plaintiff missed work and was treated at a hospital emergency room.  *Ex. C: Depo. II of Pl.* [#56-4] at 4-5; *Ex. C: Ex. 33 to Dep. II of Pl.* [#56-4] at 10.  Plaintiff requested, but was not granted, permission to take scheduled leave on June 7, 2009.  *Ex. B: Depo. I of Pl.* [#56-2] at 61.  Nevertheless, Plaintiff was absent from work on June 7, 2009.  *Id.* at 65.  Plaintiff did not provide Defendant with any medical documentation to excuse his unscheduled absence on June 7, 2009.  *Id.* at 64-65.  Plaintiff was absent from work and was treated at a hospital emergency room again on June 8, 2009.  *Ex. B: Ex. 24 to Depo. I of Pl.* [#56-3] at 68; *Ex. C: Depo. II of Pl.* [#56-4] at 5; *Ex. C: Ex. 33 to Dep. II of Pl.* [#56-4] at 10.  Plaintiff gave Defendant a note from the Centura Emergency Department regarding his absence from work on June 8, 2009.  *Ex. B: Depo. I of Pl.* [#56-2] at 62-63; *Ex. B: Ex. 24 to Depo. I of Pl.* [#56-3] at 68.  The illness that caused Plaintiff to miss work on June 8, 2009, was not the reason that he missed work on June 7, 2009.  *Ex. B: Depo. I of Pl.* [#56-2] at 66.  On June 11, 2009, Moss gave Plaintiff

a Final Written Warning for the June 7 unscheduled absence. *Id.* at 58-61; *Ex. B: Ex. 23 to Depo. I of Pl.* [#56-3] at 67. The June 11 Final Written Warning admonished Plaintiff that additional attendance occurrences would result in termination of his employment. *Ex. B: Ex. 23 to Depo. I of Pl.* [#56-3] at 67.

On July 9, 2009, Plaintiff was thirty minutes late to work due to car trouble. *Ex. B: Depo. I of Pl.* [#56-2] at 67. Unreliable transportation is not a basis for an exception from Defendant's attendance policy. *Ex. B: Ex. 4 to Depo. I of Pl.* [#56-3] at 28. As a result of Plaintiff's tardiness and other attendance problems, Beetham and Westberg terminated Plaintiff's employment on July 9, 2009. *Ex. B: Depo. I of Pl.* [#56-2] at 68-70; *Ex. B: Depo. I of Pl.* [#56-3] at 1; *Ex. B: Ex. 25 to Depo. I of Pl.* [#56-3] at 69; *Scheduling Order* [#34] § 4.5. Other than the discipline set forth above, Defendant did not take disciplinary action against Plaintiff for attendance-related problems. *Ex. E: Decl. of Miller* [#56-6] ¶ 4.

During his employment with Defendant, Plaintiff did not apply for any promotion. *Id.* ¶ 5; *Ex. A: Decl. of Beetham* [#56-1] ¶ 4; *Ex. D: Decl. of Westberg* [#56-5] ¶ 5. On September 24, 2009, Plaintiff filed a charge of discrimination with the Colorado Civil Rights Division. *Ex. B: Depo. I of Pl.* [#56-3] at 4-5; *Ex. B: Ex. 26 to Depo. I of Pl.* [#56-3] at 70-71; *Scheduling Order* [#34] § 4.6. In his charge, Plaintiff challenged specific discrete actions of Defendant, including: (1) terminating his employment in 2008 and again in July 2009, (2) not assigning him to telecommute, and (3) not providing him opportunities for advancement. *Ex. B: Ex. 26 to Depo. I of Pl.* [#56-3] at 70-71.[2]

---

[2] The Court notes that Defendant's use of "Final Written Warnings" that were not final and its reversal of its initial decision to terminate Plaintiff's employment after less than two weeks are not model employment practices, and may have encouraged litigation over Plaintiff's ultimate termination. Nevertheless, the record is devoid of any argument or evidence connecting these

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his

---

practices with racial discrimination.

pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Response [#93] and other filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

As noted, Plaintiff's Title VII lawsuit rests on six incidents of alleged racial discrimination by Defendant: termination of his employment in October 2008; reinstatement of his employment without back pay in October 2008; failure to evaluate his job performance in January 2009; failure to allow him to telecommute to work; failure to promote him; and termination of his employment in July 2009. Defendant argues that entry

of summary judgment in its favor is appropriate because Plaintiff failed to exhaust his administrative remedies and failed to provide evidence of racial discrimination.

## A.    Exhaustion of Administrative Remedies

A plaintiff must exhaust his administrative remedies prior to instituting a Title VII action in federal court. *See, e.g.*, *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996); *Khader v. Aspin*, 1 F.3d 968, 970-71 (10th Cir. 1993). Failure to exhaust administrative remedies deprives a federal court of jurisdiction over a discrimination claim. *Runyon*, 91 F.3d at 1399. Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC with the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989). Exhausting administrative remedies requires that the plaintiff timely present his claims to the EEOC and receive a right-to-sue letter based on those claims. *Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999).

### 1.    Timeliness

Defendant argues that some of the events upon which Plaintiff bases his Title VII claim are untimely. A plaintiff must file a charge of discrimination with the EEOC before commencing a civil action pursuant to Title VII. *See* 42 U.S.C. § 2000e-5 (e), (f). As applicable to this matter, a charge must be filed "within 300 days after the alleged unlawful practice occurred." 42 U.S.C. § 2000e-5 (e)(1).

Plaintiff filed his charge of discrimination on September 24, 2009. *Ex. B: Ex. 26 to Depo. I of Pl.* [#56-3] at 70-71. For purposes of this charge, the "unlawful conduct" period

extends to three-hundred days prior to its filing, or November 28, 2008.  All discrete events occurring before that date are time-barred.  Accordingly, two of the six occurrences of which Plaintiff complains are time-barred because they indisputably occurred in October 2008: the first termination of his employment and his subsequent reinstatement without back pay.  *See Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1178 (10th Cir. 2011) (holding that "[d]iscrete acts such as termination . . . trigger the statute of limitations when announced to the claimant, and do so whether or not all of their adverse effects or consequences are immediately felt" [internal quotations and citations omitted]).

Accordingly, entry of summary judgment in favor of Defendant is appropriate on these two aspects of Plaintiff's Title VII claim.  *See Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997) (holding that the court lacks jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge).

   **2.   Scope**

Defendant further argues that some of the events underlying Plaintiff's Title VII claim are beyond the scope of the events referred to in Plaintiff's charge of discrimination. Because the EEOC charge of discrimination is intended to give the employer notice of the claim and permit conciliation prior to litigation, courts limit the scope of a Title VII claim to the matters raised in the charge and in the administrative investigation that can reasonably be expected to follow.  *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *Robinson v. Bd. of Regents of Univ. of Colo.*, 390 F. Supp. 2d 1011, 1017 (D. Colo. 2005).  Defendant argues that Plaintiff's charge does not encompass the issues of:

(1) reinstatement of his employment without back pay in October 2008,[3] and (2) failure to evaluate his job performance in January 2009.  Therefore, the Court examines whether the investigation of Plaintiff's charge could reasonably include these issues.

After careful review of the undisputed facts and evidence, the Court concludes that Plaintiff's charge did not place Defendant on notice or permit administrative investigation of either the back-pay issue or the failure-to-evaluate issue.  The charge lists six allegations in support of Plaintiff's assertion of racial discrimination: (1) discharge from and reinstatement of employment in September 2008; (2) refusal to permit Plaintiff to telecommute from home; (3) an order by a supervisor that Plaintiff should not wear a certain jacket that the supervisor deemed too casual for work; (4) payment for only one and not two days of vacation taken in early 2009;[4] (5) failure to promote; and (6) discharge in July 2009.  *Ex. B: Ex. 26 to Depo. I of Pl.* [#56-3] at 70-71.  None of these allegations in the charge reference Defendant's alleged failure to provide Plaintiff back pay in October 2008 or failure to evaluate Plaintiff's job performance in January 2009.  As Defendant notes, "the charge must contain facts concerning the discriminatory . . . actions underlying each claim." *Motion* [#56] at 13 (quoting *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Because Plaintiff failed to assert that these actions by Defendant constituted unlawful racial discrimination in his charge of discrimination, entry of summary judgment in favor of Defendant is appropriate with respect to those events.

---

[3] Because the Court addresses the scope of the charge of discrimination in connection with Plaintiff's failure-to-evaluate claim, the Court will also briefly address Defendant's alternative argument concerning scope with respect to the October 2008 back-pay issue, even though the Court has already disposed of the issue on timeliness grounds.

[4] Plaintiff did not pursue either the work attire or vacation pay issue in his Amended Complaint to this lawsuit.  *See Am. Compl.* [#5].

**B.    Racial Discrimination Claim**

With respect to the remaining three aspects of Plaintiff's Title VII claim—failure to allow him to telecommute; failure to promote him; and termination of his employment in July 2009—Defendant argues that Plaintiff has failed to establish the elements of a prima facie claim of discrimination. *See Motion* [#56] at 14-17; *see, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (discussing the plaintiff's burden in presenting a prima facie claim of discrimination in a motion for summary judgment); *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir.2002) (same); *Shapolia v. Los Alamos Nat. Lab.*, 992 F.2d 1033, 1038 (10th Cir.1993) (same); *Goodson v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 2007 WL 987472, *3 (D. Colo. 2007) (same).

Pursuant to Title VII, an employer may not "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may rely on either direct or circumstantial evidence to support a claim for racial discrimination. *See Perez v. St. John Medical Ctr.*, 409 Fed. App'x 213, 216 (10th Cir. 2010). Because Plaintiff in this case has presented no direct evidence of racial animus, the Court turns to the burden-shifting framework of *McDonnell Douglas*. *See id.* at 216 n.2.

Pursuant to *McDonnell Douglas*, a plaintiff must present a prima facie case of discrimination. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). If the plaintiff does so, the burden of production shifts to the defendant employer to identify and provide evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant employer does so, the burden shifts to the plaintiff again to provide evidence that the proffered reason was pretextual. *Id.*

A prima facie case of discrimination requires the plaintiff to provide evidence of the following four elements: (1) the plaintiff was a member in a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 (10th Cir. 2007). The Court examines in turn each of the remaining actions taken by Defendant against Plaintiff.

### 1. Failure to Assign Plaintiff to Telecommute from Home

Defendant argues that this aspect of Plaintiff's Title VII claim fails because its failure to assign Plaintiff to telecommute from home was not an adverse employment action. *See Motion* [#56] at 15-16. To constitute an "adverse employment action," the plaintiff must show that a reasonable employee would have found the action to be materially adverse. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

The parties agree that Plaintiff was assigned to work on location at Defendant's office on the date he was first hired and that Defendant's failure to change his work location meant that Plaintiff's work conditions remained unchanged. *Ex. B: Depo. I of Pl.* [#56-2] at 7-8. Even if Plaintiff was inconvenienced by having to commute to work as opposed to telecommute from home, "a mere inconvenience" is not an adverse employment action. *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)). *See also Weil v. CareCore Nat'l, LLC*, __ F. Supp. 2d __, __, 2011 WL 2415791, at *7 (D. Colo. June 14, 2011) (stating in the context of a Family Medical Leave Act claim that "[a]lthough working at the office may have been more burdensome to Plaintiff than working at home, 'mere inconvenience' does not constitute an adverse employment action"). Accordingly, entry of

summary judgment in favor of Defendant is appropriate on this aspect of Plaintiff's Title VII claim.

### 2.    Failure to Promote

In order to demonstrate unlawful failure to promote, Plaintiff must show that: (1) he is a member of a protected class; (2) a promotion was available for which he applied and was qualified; (3) he did not receive the promotion; and (4) the position remained open and the defendant employer sought additional applicants with the same qualifications as Plaintiff. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

Plaintiff fails to establish the second element of his failure-to-promote claim.  First, the undisputed evidence shows that he never applied for a promotion.  *Ex. A: Decl. of Beetham* [#56-1] ¶ 4; *Ex. D: Decl. of Westberg* [#56-5] ¶ 5; *Ex. E: Decl. of Miller* [#56-6] ¶ 5.  Second, the undisputed evidence shows that Plaintiff was not qualified for a promotion pursuant to Defendant's express written policies because of active discipline related to his attendance problems throughout his employment with Defendant.  *See, e.g., Ex. B: Depo. I of Pl.* [#56-3] at 2-3 (wherein Plaintiff admits that he was not a candidate for promotion based on Defendant's requirements).   Third, Plaintiff does not point to any specific promotion which he sought to obtain.

Accordingly, because Plaintiff has not provided evidence establishing the second element of a failure-to-promote claim, entry of summary judgment in favor of Defendant is appropriate on this aspect of Plaintiff's Title VII claim.

### 3.    Termination of Employment in July 2009

With respect to Plaintiff's termination in July 2009, Defendant does not argue that Plaintiff fails to establish the first three elements of a prima facie case of discrimination: (1)

Plaintiff is a member of a protected class; (2) Plaintiff was qualified for his position; and (3) Plaintiff suffered an adverse employment action.  *See Swackhammer*, 493 F.3d at 1166. Rather, Defendant argues that Plaintiff has provided no evidence in support of the fourth element, that  the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination."  *See id.*

In his Response, the only evidence discussed by Plaintiff to establish this inference in connection with his July 2009 termination is Defendant's change in its attendance policy in March 2009, which reduced the number of attendance violations an employee could have to two within a ninety-day period.  *See Response* [#60] at 3.  This fact alone is insufficient, because it does not raise the necessary inference of invidious intent.  More specifically, Plaintiff neither alleges nor establishes that the attendance policy change was applied only to him or only to members of protected classes, or that it had a disparate impact on protected employees.  Even if Plaintiff disagreed with the new policy because he thought it was unreasonable or even discriminatory, his subjective belief does not create an inference of racial discrimination.  *See Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *Arambu v. Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10th Cir. 1997).  There is simply no evidence that the policy change was racially motivated.

Moreover, assuming the existence of evidence in support of an inference of discrimination, Defendant has provided extensive evidence of a legitimate, nondiscriminatory reason for termination of Plaintiff's employment; that is, his excessive unexcused absences.  *See Jones*, 617 F.3d at 1278.  As noted earlier, Plaintiff has provided no evidence to contradict Defendant's records and, in fact, Plaintiff either admitted to or did not dispute Defendant's attendance records during his deposition.  Even assuming

that Plaintiff's numerous emergency room visits were excused absences under Defendant's policy, Plaintiff's overall attendance record was poor.   Because Defendant offered a legitimate nondiscriminatory reason for Plaintiff's termination, i.e., Plaintiff's poor attendance record, the burden shifts back to Plaintiff to provide evidence that Defendant's reason was pretextual.  *See Jones*, 617 F.3d at 1278.  Plaintiff has simply failed to provide any reason (such as, for example, Defendant's failure to follow its own written procedures) as to why his July 2009 termination for attendance violations was based on a pretext and that, instead, he was actually terminated due to racial discrimination.

Accordingly, entry of summary judgment in favor of Defendant is appropriate on this aspect of Plaintiff's Title VII claim.  *See Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1152-53 (10th Cir. 2008) (stating that even if a prima facie case of discrimination is assumed, when circumstantial evidence is insufficient to raise an inference of pretext under the third step of the *McDonnell Douglas* inquiry, summary judgment should enter in favor of the defendant employer).

### IV.  Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that Defendant's Motion for Summary Judgment [#55] be **GRANTED**.

The Court FURTHER **RECOMMENDS** that judgment enter in favor of Defendant on all claims.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.   A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this

Recommendation must be both timely and specific to preserve an issue for de novo review

by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).


Dated:  May 30, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge